### GENE S. JONES *v.* ALEX C. KRAMER
### (AC 21677)

Schaller, Mihalakos and Bishop, Js.

Argued May 1—officially released October 8, 2002

*Robert C. Mirto*, with whom was *Wesley R. Germonto*, law student intern, for the appellant (plaintiff).

*J. Kevin Golger*, with whom, on the brief, was *George L. Holmes, Jr.*, for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiff in this negligence action, Gene S. Jones, appeals from the judgment rendered by the trial court after a jury verdict in his favor. The plaintiff claims that the court improperly applied General Statutes § 52-225a[1] to reduce the jury's award of

---

[1] General Statutes § 52-225a provides: "(a) In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death occurring on or after October 1, 1987, or (2) personal injury or wrongful death, arising out of the rendition of professional services by a health care provider, occurring on or after October 1, 1985, and prior to October 1, 1986, if the action was filed on or after October 1, 1987, and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for (1) a collateral source for which a right of subrogation exists and (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h.

"(b) Upon a finding of liability and an awarding of damages by the trier

economic damages by the amount of collateral source payments he had received. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's appeal. By way of an amended complaint, the plaintiff brought this action against the defendant, Alex Davis, executor of the estate of Alex C. Kramer.[2] In the amended complaint, the plaintiff alleged that he sustained injuries in an automobile collision with Kramer and that the collision was caused by Kramer's negligence. At trial, the plaintiff claimed more than $40,000 in economic damages, including more than $30,000 in medical expenses and $10,000 in lost wages. The jury returned a verdict for the plaintiff, awarding him $15,000 in economic damages and $35,000 in noneconomic damages.

At the subsequent collateral source hearing, the parties stipulated that $13,031 of the plaintiff's medical bills had been paid by his insurance carrier. The parties also stipulated that after the deduction of insurance premiums paid by the plaintiff, the net amount received from the insurer was $12,000 and that the plaintiff was entitled to costs in the amount of $4361.21. In addition, the court found, on the basis of the testimony of the plaintiff, that the plaintiff's unreimbursed, out-of-pocket

of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment.

"(c) The court shall receive evidence from the claimant and any other appropriate person concerning any amount which has been paid, contributed, or forfeited, as of the date the court enters judgment, by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death."

[2] The plaintiff originally commenced the action against Alex C. Kramer. Kramer died prior to trial, and the court, *Nadeau, J.*, granted Davis' motion to be substituted as the defendant. In this opinion, we refer to Davis as the defendant.

medical expenses totaled $16,008.61. The court reduced the $50,000 verdict by the full amount of $12,000 and thereafter rendered judgment for the plaintiff in the amount of $42,361.21.

On appeal, the plaintiff claims that the court incorrectly concluded that the verdict was subject to a collateral source reduction pursuant to § 52-225a. Specifically, the plaintiff argues that only payments specifically included in the jury's verdict may be deducted as collateral sources. The plaintiff further argues that the burden is on the defendant to request jury interrogatories to establish which payments actually are included in the jury's verdict.[3] The defendant argues that § 52-225a requires the reduction of economic damages by the total of all collateral source payments received, less the total of premiums paid to secure the collateral sources. We agree with the defendant.

We begin our analysis by setting forth the relevant standard of review. "[I]nterpretation of § 52-225a is a matter of statutory construction. Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Alvarado* v. *Black*, 248 Conn. 409, 414–15, 728 A.2d 500 (1999).

"As with any issue of statutory interpretation, our initial guide is the language of the operative statutory

---

[3] Because we conclude that § 52-225a does not require the court to determine which payments actually are included in the jury's verdict, we do not reach the plaintiff's argument regarding the burden of proof.

provisions." (Internal quotation marks omitted.) Id., 415. "We are constrained to read a statute as written . . . and we may not read into clearly expressed legislation provisions which do not find expression in its words . . . ." (Citations omitted; internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 494, 778 A.2d 33 (2001). "In interpreting the language of a statute, the words must be given their plain and ordinary meaning and their natural and usual sense unless the context indicates that a different meaning was intended." (Internal quotation marks omitted.) *In re Darlene C.*, 247 Conn. 1, 10, 717 A.2d 1242 (1998). Furthermore, "[a] statute which provides that a thing shall be done in a certain way carries with it an implied prohibition against doing that thing in any other way." (Internal quotation marks omitted.) *State* v. *State Employees' Review Board*, 239 Conn. 638, 654, 687 A.2d 134 (1997).

Subsection (a) of § 52-225a provides in relevant part: "In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death . . . and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section . . . ." Subsection (b) of § 52-225a requires the court to determine "the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment." Subsection (c) of § 52-225a requires the court to determine "any amount which has been paid, contributed, or forfeited,

as of the date the court enters judgment, by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death."

The plaintiff interprets § 52-225a as providing that only payments specifically included in the jury's verdict may be deducted as collateral sources. The plaintiff's interpretation does not comport with the express language of the statute. Contrary to the plaintiff's argument, the express language of § 52-225a (a) requires the court to deduct from the jury's award of economic damages "*an amount* equal to *the total* of amounts determined to have been paid under subsection (b) of this section less *the total* of amounts determined to have been paid under subsection (c) of this section . . . ." (Emphasis added.) Subsection (b) likewise requires the court to determine "the *total amount* of collateral sources . . . ." (Emphasis added.)

The legislature's use of the word "total" in both subsections (a) and (b) of the statute is inconsistent with the piecemeal approach to collateral source reductions advocated by the plaintiff. As required by our rules of statutory interpretation, we give the word "total" its plain and ordinary meaning. "Total" is defined as "a product of addition" and "comprising or constituting a whole; entire." Merriam-Webster's Collegiate Dictionary (10th Ed.). The statute therefore authorizes a reduction of the jury's award of economic damages by a single amount representing the sum of all collateral sources received by the plaintiff, less any payments made to secure the collateral sources.

The plaintiff further suggests that we should nevertheless limit the operation of the statute because of concerns expressed by various legislators during the legislative debates leading to the passage of Public Acts

1985, No. 85-574. During the debates in the House of Representatives, certain legislators expressed the concern that a defendant might receive a reduction for collateral source payments not corresponding to damages actually awarded by the jury. See 28 H.R. Proc., Pt. 27, 1985 Sess., pp. 9843–47. We decline the plaintiff's invitation to reinterpret § 52-225a. The comments cited by the plaintiff were offered in support of an amendment that eliminated disability coverage from the definition of collateral sources that eventually was codified in General Statutes § 52-225b. There is no indication that the legislators' concerns were raised in regard to the legislation in general, rather than being limited to the issue of disability benefits. Furthermore, as previously discussed, the statutory language provides no basis for concluding that the legislation as finally enacted was intended to address those concerns. We therefore decline to alter our interpretation of § 52-225a on the basis of those legislative comments.

Moreover, the legislative policy underlying § 52-225a supports our reading of the statutory language. "The language and legislative history of § 52-225a clearly indicate that § 52-225a was intended to prevent plaintiffs from obtaining double recoveries, i.e., collecting economic damages from a defendant and also receiving collateral source payments." *Alvarado* v. *Black*, supra, 248 Conn. 417. The interpretation advanced by the plaintiff would contravene that legislative policy because it would permit plaintiffs to collect the full amount of economic damages as determined by the jury and also receive collateral source payments. The application of the statute as written, by contrast, furthers the legislative purpose of preventing double recovery by limiting plaintiffs to the amount of economic damages as determined by the jury. The legislative policy, therefore, sup-

ports our conclusion that § 52-225a must be interpreted as written.[4]

Turning to the application of § 52-225a to the facts of the present case, we note that the jury found that the plaintiff's economic damages totaled $15,000. The parties stipulated that the total collateral source payments received by the plaintiff, less the insurance premiums paid to secure the collateral source, totaled $12,000. Section § 52-225a (a) requires the reduction of the $15,000 economic damages by the $12,000 net collateral source payments. The court, therefore, properly applied § 52-225a to reduce the verdict by $12,000.

The judgment is affirmed.

In this opinion MIHALAKOS, J., concurred.

BISHOP, J., dissenting. This case involves two questions not previously decided by either this court or our Supreme Court. The first question is whether, in a personal injury action, the amount of economic dam-

---

[4] In proposing that resort to statutory construction is necessary "to glean the intention of the General Assembly in enacting the collateral source portion of [General Statutes] § 52-225a," the dissent emphasizes that the purpose of tort reform in this context was to prevent the recovery of double payments to plaintiffs. Considering, however, the language that the legislature adopted to accomplish that purpose, our reading of § 52-225a neither "frustrates the stated purpose of tort reform," denies plaintiffs "payments for economic losses not covered by the jury's award of damages," nor does it in any sense negate "a jury's economic damages award," as the dissent asserts. It may well be that an elaborate statutory scheme imposing on the defendant the burden of proving to the trial court the specific expenses for which a jury awards economic damages and one in which only those specific expenses are eligible for collateral source deductions would be fair and reasonable. Policy arguments in support of such a proposed statutory scheme are compelling in many respects. We conclude, however, that the legislature did not enact such a plan; the language it adopted establishes neither that burden nor that methodology. Given the legislative history of the tort reform statutes, it is clear that the legislature easily could have adopted such a scheme if its intent were to do so. In light of what the legislature did enact, our responsibility is to interpret the statutory language before us. We are bound by that legislation.

ages awarded by a jury should be reduced only by collateral source payments for the damages actually awarded. Second, if a collateral source reduction is warranted only for the specific damages awarded, which party should have the burden of proving the nexus between the damages awarded and the collateral source payments. Because I answer the first question in the affirmative and would place the burden of proof on the defendant with respect to the second, I would reverse the judgment of the trial court.

My analysis follows two related tracks. First, I believe the language of General Statutes § 52-225a, when understood in the context of its purpose, leads to my conclusion. Second, because the statute is in derogation of the common law, it should be narrowly construed to achieve no more than its stated purpose of abrogating the common-law collateral source rule.

As a starting point, nothing in tort reform negated the basic notion that "[t]he purpose of damages in a tort action is to restore the injured party to his original position." D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 169, p. 449. To the extent reasonably possible, this includes damages for lost earnings and medical and hospital bills reasonably incurred for injuries proximately caused by the defendant's negligence, as well as for less tangible noneconomic damages. Tort reform did, however, alter the landscape by changing the common-law collateral source rule that a defendant is not entitled to be relieved from paying any part of the compensation due for injuries proximately resulting from his act where payment for such injuries or damages comes from a collateral source wholly independent of him. In 1985 and 1986, through a series of legislative changes, the legislature enacted tort reform, which abrogated this common-law collateral source rule. The chief purpose of the change regarding the collateral source rule was to prevent

plaintiffs from receiving a double payment for the same damages. It was not intended to provide an avenue to take away damages awarded to a plaintiff if the result would prevent him from being made whole.

The language of § 52-225a regarding reduction for collateral sources is silent on the issue of whether economic damages awarded by a fact finder may be reduced by the amount of collateral payments for *any* economic damages sustained by the plaintiff, or whether a defendant is entitled to a reduction of economic damages only for the collateral payments made for the damages *actually assessed* by the fact finder. I do not share the majority's conclusion that the repeated use of the word "total" in two portions of the statute makes it clear that the legislature intended for any award of economic damages to be reduced by the amount of payments of any other economic damages, regardless of whether the damages for which collateral payments made were, in fact, part of the jury's award. Accordingly, I would resort to statutory construction to glean the intention of the General Assembly in enacting the collateral source portion of § 52-225a.

Our Supreme Court and this court often have employed statutory construction to glean the intent of this legislation and, in doing so, uniformly have determined that the principal purpose of the portion of tort reform dealing with collateral sources was to change the common law so as to prevent a plaintiff from receiving a double recovery for the same damages. See *Alvarado* v. *Black*, 248 Conn. 409, 417, 728 A.2d 500 (1999); *Corcoran* v. *Taylor*, 65 Conn. App. 340, 344, 782 A.2d 728, cert. denied, 258 Conn. 925, 783 A.2d 1027 (2001). In *Corcoran*, this court opined that "[t]he language and legislative history of § 52-225a clearly indicate that § 52-225a was intended to prevent plaintiffs from obtaining double recoveries, i.e., collecting economic damages from a defendant and also receiving collateral source

payments." (Internal quotation marks omitted.) *Corcoran* v. *Taylor*, supra, 344–45.

Section 52-225a (a) provides in relevant part that "[i]n any civil action . . . wherein. . . damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages . . . by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section . . . ." Subsection (b) provides in relevant part that "[u]pon a finding of liability and an awarding of damages by the trier of fact . . . the court shall receive evidence . . . concerning the total amount of collateral sources which have been paid for the benefit of the claimant . . . ."

In this instance, I believe that the term "damages" in § 52-225a has to be understood in the context of the purposes of tort reform. In relevant part, § 52-225a (a) provides that "wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h . . . ." General Statutes § 52-572h (a) provides in relevant part that " '[e]conomic damages' means compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages . . . ." The majority reads those statutes as permitting the reduction from the economic award of any medical expenses or lost wages that the plaintiff had claimed and that had been paid by collateral sources, regardless of whether the jury had compensated the plaintiff for them specifically. I believe this result frustrates the stated purpose of tort reform to avoid double payments to plaintiffs. In fact, if the majority is correct in its

understanding of the statute, then tort reform serves not only to deny plaintiffs double payments, but also to deny them payments for economic losses *not* covered by the jury's award of damages. It also has the potential of negating a jury's economic damages award when that award was not the subject of a collateral source payment.

I believe that the majority misconstrues the contextual use of the term "damages" in § 52-225a. We know, from our common understanding of tort law, that a fact finder may make an award for economic damages only to the extent that the damages have been proximately caused by the defendant's negligence and to the extent that the amount of damages is reasonable. Thus, in the case of medical and hospital bills, it is axiomatic that a fact finder may award economic damages only in reasonable amounts for reasonably necessary medical and hospital expenses proximately related to the defendant's negligence. It is from these specific awards only that collateral payments may be deducted.

With respect to the statutory scheme, § 52-572h provides a generic definition of economic damages. We therefore know that economic damages include several different types of pecuniary loss, including medical and hospital expenses and loss of income. Once it is known whether an item falls within the category of economic damages, we then must look to § 52-225a to determine the application of the collateral source rule. To give meaning to the stated intent of tort reform, a more reasonable understanding of the term "damages" in § 52-225a requires that the court, at a collateral source hearing, should deduct collateral source payments for the *specific* economic damages that were, in fact, awarded by the jury.

The twofold consideration of reasonableness and causal connection is implicit within the definition of

damages awarded by the fact finder. Otherwise, they could not have reasonably been awarded. I therefore would interpret the statute as requiring the fact finder to make this determination as to each item of economic damages it awards, a task that would not be difficult or inconvenient. Indeed, in this case, the plaintiff provided the jury with a one page itemized list of his claimed medical and hospital expenses, and another one page itemization of his claimed lost earnings. The defendant's counsel could have asked the jurors, through appropriate interrogatories, to determine which, if any, of the plaintiff's specific damages claimed, they found proximately related and reasonably incurred. If this procedure had been followed, double payment could have been avoided by subtracting from the jury's award of damages only those payments already received by the plaintiff from collateral sources.

Following the suggested pathway would have avoided double payment to the plaintiff without risking an unwarranted reduction in his economic damages award, a result that may well have occurred in this case. The plaintiff sought economic damages in the aggregate amount of $40,055, broken down as $30,030 in claimed medical expenses and $10,025 in lost wages. In returning its verdict for $50,000, the jury assigned $15,000 as economic damages. The plaintiff thus paid out-of-pocket medical and hospital expenses that were substantially in excess of the total economic damages awarded by the jury.[1] Because no interrogatories were submitted to the jury, it is not possible to know whether the economic damages awarded by the jury included all or any of the plaintiff's claimed lost wages. It is clear, by simple mathematics, however, that the award did not compensate the plaintiff for all of his claimed medical expenses. Reciprocally, with respect to collat-

---

[1] At the collateral source hearing, the court found that the plaintiff's unreimbursed medical expenses totaled $16,008.61.

eral sources, the court was informed only that collateral sources paid a total of $12,000, net of premiums, toward the plaintiff's claimed medical expenses. When, as here, a jury returns a verdict for economic damages in an amount less than that claimed by the plaintiff, it is a necessary inference that the jury found that some of the claimed damages either were not reasonably incurred or were not causally connected to the defendant's negligence. On the status of this record, however, we cannot know whether any part of the $15,000 awarded by the jury for economic damages was also paid by collateral sources, thus constituting double payments to the plaintiff.

The notion that to operate to reduce an award, collateral source payments must have been directed to specific damages awarded by the jury, finds support in an analysis of the collateral source rule itself. In *Mack* v. *LaValley*, 55 Conn. App. 150, 167, 738 A.2d 715, cert. denied, 251 Conn. 928, 742 A.2d 363 (1999), this court expressed its understanding of the common-law collateral source rule as follows: "Prior to the enactment of § 52-225a in 1985, Connecticut adhered to the common-law collateral source rule, which provides that 'a defendant is not entitled to be relieved from paying any part of the compensation due for *injuries proximately resulting from his act where payment [for such injuries or damages] comes from a collateral source,* wholly independent of him.' " (Emphasis added.) In the application of this rule, courts traditionally excluded evidence that a plaintiff had benefited from payments made by unrelated third parties for damages sought from the jury because the defendant was not entitled to any reduction of liability due to payments for those damages made by an unrelated third party. Because tort reform was intended only to abrogate the common-law rule, it should be limited to relieve a tortfeasor of liability for damages only to the extent that those

particular damages have been paid by an independent third party. Relieving a tortfeasor of liability for damages paid by third parties, but not within the jury's award, goes well beyond merely abrogating the common-law collateral source rule. "It is a rule of statutory construction that statutes in derogation of the common law should be strictly construed so as not to extend, modify or enlarge [their] provisions beyond [their] scope by the mechanics of statutory construction." (Internal quotation marks omitted.) *Brennan* v. *Burger King Corp.*, 46 Conn. App. 76, 82–83, 698 A.2d 364 (1997), aff'd, 244 Conn. 204, 707 A.2d 30 (1998).

To follow the intent of tort reform faithfully without impermissibly diminishing an economic damages award to the plaintiff, the court, before making any reduction in economic damages for collateral source payments, must know specifically what economic damages were awarded by the jury. With this information, the court can then satisfy tort reform's intent by reducing the economic award only by the amount of collateral source payments for the damages actually awarded. Such a process would have been simple to adopt in this case because the jury was provided with two relevant exhibits. Exhibit five was a one page document, itemizing by care provider and amount, the total of the plaintiff's medical damages claim. Exhibit six was a one page document listing each date and the corresponding amount of lost earnings claimed by the plaintiff. It would not have been either confusing or cumbersome to ask the jury, in its deliberations concerning economic damages, to specify the medical expenses and lost earnings, if any, that constituted the components of its $15,000 economic damage award.

I believe that the defendant should have the burden of proving collateral source payments of damages awarded by the jury. While I agree that the language of the pertinent statutes is silent on the question of

burden of proof, placing the burden on the defendant is consistent with the statutory purpose. Additionally, because the statute is a deviation from the common law, placing the burden on the defendant to prove the applicability of the statutory collateral source provision to the facts at hand is consistent with the traditional approach to statutes in derogation of the common law. Because I believe that the decision of the majority has the effect of enlarging the provisions of § 52-225a beyond its intended reach, I respectfully dissent.