## GENE S. JONES *v.* ALEX C. KRAMER
### (SC 16872)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

Argued October 20, 2003—officially released January 13, 2004

*Robert C. Mirto*, with whom was *Wesley R. Mead*, for the appellant (plaintiff).

*J. Kevin Golger*, for the appellee (substitute defendant).

*William F. Gallagher* and *Hugh D. Hughes* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

KATZ, J. In a personal injury action, General Statutes § 52-225a[1] authorizes the trial court to reduce the plain-

---

[1] General Statutes § 52-225a provides: "(a) In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death occurring on or after October 1, 1987, or (2) personal injury or wrongful death, arising out of the rendition of professional services by a health care provider, occurring on or after October 1, 1985, and prior to October 1, 1986, if the action was filed on or after October 1, 1987, and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for (1) a collateral source for which a right of subrogation exists and (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h.

"(b) Upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment.

"(c) The court shall receive evidence from the claimant and any other appropriate person concerning any amount which has been paid, contributed, or forfeited, as of the date the court enters judgment, by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death."

tiff's economic damages award by an amount equal to the sum of collateral source payments received by the plaintiff, less any amount paid by or on behalf of the plaintiff to secure those payments. This certified appeal[2] requires that we determine whether § 52-225a requires the trial court to deduct all collateral source payments from the plaintiff's economic damages award, or only those payments that were allocated to the specific items of damages actually included within the fact finder's verdict. Specifically, the plaintiff, Gene S. Jones, claims that the Appellate Court improperly concluded that the trial court properly had reduced his economic damages award by all collateral source payments received by him, irrespective of whether those payments corresponded with items of damages that actually had been included in the jury's verdict. See *Jones* v. *Kramer*, 72 Conn. App. 789, 796, 806 A.2d 606 (2002). We agree with the plaintiff and, accordingly, reverse the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following relevant facts and procedural history: "By way of an amended complaint, the plaintiff brought this action against the defendant, Alex Davis, executor of the estate of Alex C. Kramer.[3] In the amended complaint, the plaintiff alleged that he sustained injuries in an automobile collision with Kramer and that the collision was caused by Kramer's negligence. At trial, the plaintiff claimed more than \$40,000 in economic damages, including

[2] We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly determine that the trial court applied General Statutes § 52-225a appropriately to reduce the jury's award of economic damages by the amount of collateral source payments received by the plaintiff?" *Jones* v. *Kramer*, 262 Conn. 914, 915, 811 A.2d 1291 (2002).

[3] "The plaintiff originally commenced the action against Alex C. Kramer. Kramer died prior to trial, and the court, *Nadeau, J.*, granted Davis' motion to be substituted as the defendant. In this opinion, we refer to Davis as the defendant." *Jones* v. *Kramer*, supra, 72 Conn. App. 791 n.2.

more than $30,000 in medical expenses and $10,000 in lost wages. The jury returned a verdict for the plaintiff, awarding him $15,000 in economic damages and $35,000 in noneconomic damages.

"At the subsequent collateral source hearing, the parties stipulated that $13,031 of the plaintiff's medical bills had been paid by his insurance carrier. The parties also stipulated that after the deduction of insurance premiums paid by the plaintiff, the net amount received from the insurer was $12,000 and that the plaintiff was entitled to costs in the amount of $4361.21. In addition, the [trial] court found, on the basis of the testimony of the plaintiff, that the plaintiff's unreimbursed, out-of-pocket medical expenses totaled $16,008.61." Id., 791–92.

On the basis of these facts, the defendant sought a collateral source credit of $12,000, claiming that, because the plaintiff's insurance carrier had paid in excess of that amount toward the plaintiff's medical bills, the defendant was entitled to that credit. The plaintiff argued in response that the jury had awarded only $15,000 when he had claimed in excess of $30,000 in medical expenses and $10,000 in lost wages. The jury had not delineated the amount awarded for each specific item of damages, and the defendant had not proven whether the economic damages awarded by the jury included any of the medical bills or other benefits paid by the plaintiff's insurance carrier. Therefore, the plaintiff claimed, the defendant had not sustained his burden of proof as to whether he was entitled to any collateral source credit. Pursuant to the defendant's request, the trial court reduced the $50,000 verdict by the full amount of $12,000 and thereafter rendered judgment for the plaintiff in the amount of $42,361.21, which included the plaintiff's costs.

On appeal to the Appellate Court, the plaintiff claimed that the trial court improperly had concluded that the

verdict was subject to a collateral source reduction pursuant to § 52-225a. Specifically, the plaintiff contended that § 52-225a authorizes the trial court to deduct only those collateral source payments received for damages that actually were included in the jury's verdict. The plaintiff further argued that the defendant should bear the burden of requesting jury interrogatories to establish whether the verdict includes damages for which the plaintiff had received collateral source benefits. Id., 792. Because the defendant had not sustained his burden of proof, the plaintiff claimed that the defendant was not entitled to any collateral source credit. A majority of the Appellate Court rejected the plaintiff's claim, concluding that the express language of the statute, as written, "authorizes a reduction of the jury's award of economic damages by a single amount representing the sum of *all* collateral sources received by the plaintiff, less any payments made to secure the collateral sources." (Emphasis added.) Id., 794. In so concluding, the Appellate Court noted that, contrary to the plaintiff's argument, the express language of § 52-225a requires the court to deduct from the jury's award of economic damages "*an amount* equal to *the total* of amounts determined to have been paid under subsection (b) of this section less *the total* of amounts determined to have been paid under subsection (c) of this section"; (emphasis added) General Statutes § 52-225a (a); and likewise requires the court to determine "the *total amount* of collateral sources . . . ." (Emphasis added.) General Statutes § 52-225a (b). The Appellate Court, therefore, determined that "[t]he legislature's use of the word 'total' in both subsections (a) and (b) of the statute is inconsistent with the piecemeal approach to collateral source reductions advocated by the plaintiff." *Jones* v. *Kramer*, supra, 72 Conn. App. 794. Additionally, the Appellate Court stated that its conclusion was consistent with the legislative policy underlying

§ 52-225a "to prevent plaintiffs from obtaining double recoveries, i.e., collecting economic damages from a defendant and also receiving collateral source payments." (Internal quotation marks omitted.) Id., 795.

In a dissent to the majority opinion, Judge Bishop determined that § 52-225a authorizes the trial court to reduce the jury's award of economic damages "only by collateral source payments for the damages actually awarded." Id., 797. Specifically, Judge Bishop disagreed with "the majority's conclusion that the repeated use of the word 'total' in two portions of the statute makes it clear that the legislature intended for any award of economic damages to be reduced by the amount of payments of any other economic damages, regardless of whether the damages for which collateral payments made were, in fact, part of the jury's award." Id., 798 (*Bishop, J.,* dissenting). Rather, he reasoned that the language of § 52-225a must be understood in the context of its underlying legislative policy, as a function of tort reform, "to change the common law so as to prevent a plaintiff from receiving a double recovery for the same damages." Id. Therefore, Judge Bishop concluded in his dissent that "[t]o give meaning to the stated intent of tort reform, a more reasonable understanding of the term 'damages' in § 52-225a requires that the court, at a collateral source hearing, should deduct collateral source payments for the *specific* economic damages that were, in fact, awarded by the jury." (Emphasis in original.) Id., 800. Additionally, he stated that § 52-225a should be construed narrowly because it had been enacted in derogation of the common-law collateral source rule. Id., 802–803. Finally, Judge Bishop concluded that the defendant should bear the burden of proving collateral source payments of damages awarded by the jury, because such an allocation of the burden of proof is consistent with both the statutory

purpose of § 52-225a and the traditional treatment of statutes in derogation of the common law. Id., 803–804.

On appeal to this court, the plaintiff urges us to adopt the reasoning of Judge Bishop's dissent as the proper resolution of this issue. Specifically, the plaintiff contends in his brief that the statutory terms "damages" and "award," when understood within the context of the statute, were intended by the legislature to mean " 'damages actually awarded by the trier of fact.' " The plaintiff also contends that § 52-225a must be construed narrowly because it is a statute in derogation of the common-law collateral source rule. The defendant argues that, to the contrary, § 52-225a requires the reduction of any economic damages award by the sum of any collateral sources paid for the benefit of the plaintiff. The defendant also claims that the judgment of the Appellate Court is supported by the statute's "legislative purpose of preventing double recoveries by limiting plaintiffs to the amount of economic damages as determined by the jury." We agree with the plaintiff.

The plaintiff's claim turns on our construction of § 52-225a. "Issues of statutory construction raise questions of law, over which we exercise plenary review." *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 588, 830 A.2d 164 (2003). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks

omitted.) *Bender* v. *Bender*, 258 Conn. 733, 741, 785 A.2d 197 (2001).[4]

With these principles in mind, we turn to the plaintiff's claim. "As with all issues of statutory interpretation, we look first to the language of the statute." (Internal quotation marks omitted.) *Spears* v. *Garcia*, 263 Conn. 22, 28–29, 818 A.2d 37 (2003). General Statutes § 52-225a (a) provides in relevant part: "In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from . . . personal injury . . . and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages . . . by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total amounts determined to have been paid under subsection (c) of this section . . . ." The statute further provides: "Upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment." General Statutes § 52-225a (b). Lastly, General Statutes § 52-225a (c) provides: "The court shall receive

---

[4] We are, of course, aware that our legislature recently has enacted the method of interpretation by which this court is to interpret statutes when the text is plain and unambiguous. Specifically, the legislature enacted Public Acts 2003, No. 03-154, § 1, which provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." We note that, in the present case, the relevant statutory text and the relationship of that text to other statutes is not plain and unambiguous. Accordingly, our analysis does not involve this new legislation.

evidence from the claimant and any other appropriate person concerning any amount which has been paid, contributed, or forfeited, as of the date the court enters judgment, by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death." Succinctly put, § 52-225a provides that the trial court shall reduce an award for economic damages by an amount equal to the total amount of collateral sources that have been paid for the benefit of the claimant, less any premium paid by or on behalf of the claimant to secure the benefit of such collateral source payments.

Section 52-225a is silent, however, on the issue of whether economic damages awarded by the trier of fact shall be reduced by the amount of *any* collateral source benefits received by a plaintiff, or whether those damages shall be reduced only by the *specific* collateral source benefits received for items of damages that actually were included in the fact finder's award. We agree with the conclusion of Judge Bishop, as stated in his dissent, that "the repeated use of the word 'total' in two portions of the statute" does not clearly establish that the legislature had intended for a plaintiff's award of *some* economic damages to be reduced by collateral source payments received for *other* economic damages not included in the award. *Jones* v. *Kramer*, supra, 72 Conn. App. 798. We therefore turn to other methods of statutory construction to divine the intent.

At the outset, we note that § 52-225a was enacted as part of tort reform. "Prior to the enactment of § 52-225a in 1985, Connecticut adhered to the common-law collateral source rule, which provides that a defendant is not entitled to be relieved from paying any part of the compensation due for injuries proximately resulting from his act where payment [for such injuries or damages] comes from a collateral source, wholly indepen-

dent of him. . . . The basis for [such a] rule is that a wrongdoer shall not benefit from a windfall from an outside source. . . . In 1985, however, the legislature by enacting Public Acts 1985, No. 85-574 . . . abolished the common-law collateral source rule in medical malpractice actions. Public Act 85-574 . . . was codified as § 52-225a . . . . In 1986 . . . § 52-225a was extended by No. 86-338, § 4, of the 1986 Public Acts to abolish the common-law collateral source rule in all personal injury actions. . . . [The purpose behind the enactment of the statute] was . . . to prevent plaintiffs from obtaining double recoveries, i.e., collecting economic damages from a defendant and also receiving collateral source payments. See 28 H.R. Proc., Pt. 27, 1985 Sess., p. 9820, remarks of Representative Morag L. Vance; id., p. 9834, remarks of Representative Joseph D. Nardini; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1985 Sess., p. 1909, remarks of Senator Richard B. Johnston; 29 S. Proc., Pt. 10, 1986 Sess., p. 3442, remarks of Senator Johnston; 29 H.R. Proc., Pt. 22, 1986 Sess., pp. 8074–76, remarks of Representative Robert G. Jaekle." (Internal quotation marks omitted.) *Jones* v. *Riley*, 263 Conn. 93, 102–103, 818 A.2d 749 (2003). Nothing in the history of tort reform, however, would indicate that the legislature had intended to negate the basic principle that "[t]he purpose of damages in a tort action is to restore the injured party to his original position." D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 169, p. 449. Therefore, in enacting § 52-225a, the legislature sought to strike an "equitable balance . . . between preventing defendants from benefiting from reduced judgments due to collateral source payments, on the one hand, and barring plaintiffs from recovering twice for the same loss, on the other." *Jones* v. *Riley*, supra, 104. It is within this context that we must construe § 52-225a.

We reiterate that § 52-225a (a) provides in relevant part that "[i]n any civil action . . . wherein . . . *damages* are awarded to compensate the claimant, the court shall reduce the amount of such award which represents *economic damages* . . . by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section . . . ." (Emphasis added.) Subsection (b) of § 52-225a provides in relevant part that "[u]pon a finding of liability and an awarding of *damages* by the trier of fact . . . the court shall receive evidence . . . concerning the total amount of collateral sources which have been paid for the benefit of the claimant . . . ." (Emphasis added.)

We agree with Judge Bishop's assessment that, "[i]n this instance the term 'damages' in § 52-225a has to be understood in the context of the purposes of tort reform." *Jones* v. *Kramer,* supra, 72 Conn. App. 799 (*Bishop, J.,* dissenting). Put another way, our construction of the term "damages" must be consistent with the legislative policy underlying § 52-225a to prevent plaintiffs from obtaining double recoveries, without infringing upon the right of the injured party to be restored to his or her original position. We believe that the Appellate Court's view, that § 52-225a requires the wholesale reduction of an economic damages award by the sum of all collateral source benefits received by the plaintiff, irrespective of whether those benefits had been for items of damages that actually were included in the fact finder's award; see id., 794; is overly expansive and, consequently, inconsistent with the purposes of tort reform. As Judge Bishop correctly noted in his dissent: "[I]f the [Appellate Court] majority is correct in its understanding of the statute, then tort reform serves not only to deny plaintiffs double payments, but also to deny them payments for economic losses *not* covered by the jury's award of damages. It also has the potential of negating a jury's economic damages award

when that award was not the subject of a collateral source payment." (Emphasis in original.) Id., 799–800. We previously have stated that "[i]t is not our practice to construe a statute in a way to thwart its purpose or lead to absurd results . . . or in a way that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 33, 836 A.2d 224 (2003). Accordingly, we conclude that § 52-225a, when viewed in the context of the purposes of tort reform, must be construed to allow only payments specifically corresponding with items of damages included in the jury's verdict to be deducted as collateral sources from the economic damages award.

Our conclusion is consistent with our prior treatment of statutes enacted in derogation of the common law. "[W]hen a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . We recognize only those alterations of the common law that are clearly expressed in the language of the statute because the traditional principles of justice upon which the common law is founded should be perpetuated. The rule that statutes in derogation of the common law are strictly construed can be seen to serve the same policy of continuity and stability in the legal system as the doctrine of stare decisis in relation to case law." (Citations omitted; internal quotation marks omitted.) *Vitanza* v. *Upjohn Co.*, 257 Conn. 365, 381–82, 778 A.2d 829 (2001). The legislature clearly enacted § 52-225a in derogation of the common-law collateral source rule. See *Jones* v. *Riley*, supra, 263 Conn. 103 (noting § 52-225a abolished common-law collateral source rule in all personal injury actions); *Alvarado* v. *Black*, 248 Conn. 409, 417, 728 A.2d 500 (1999) (same). Accordingly, our construction

of § 52-225a is confined to that statute's scope as an abrogation of the common-law collateral source rule. We therefore decline to extend the statute to require collateral source reduction of all economic damages awards, irrespective of whether items of damages corresponding with the payments specifically had been included in the jury's verdict.[5]

We next address the procedure by which trial courts may ascertain which items of damages are subject to a collateral source reduction, and which items are not. In the present case, for example, the plaintiff claimed more than $30,000 in medical expenses, which were covered only partially by collateral sources, and more than $10,000 in lost wages, which were not covered by collateral sources. The jury awarded the plaintiff a total of $15,000 in economic damages, without delineating the amount awarded for each specific item of damages. Therefore, to apply a collateral source reduction pursuant to § 52-225a, in a manner that is faithful to the purposes of tort reform, the trial court must know the specific types of damages that were awarded by the jury. That information was missing in this case.

We conclude that the defendant, as the party seeking to reduce the amount of economic damages awarded

---

[5] The defendant also contends that, because one of the goals of tort reform was to reduce insurance premiums; see 29 S. Proc., supra, p. 3517, remarks of Senator Thomas F. Upson; the statute should be construed in furtherance of that goal as allowing a reduction of the plaintiff's economic damages award because, "notwithstanding whether the jury accepted all of the plaintiff's claims of injuries and damages, he has been reimbursed for at least some of his claims." Although we acknowledge that reduced insurance premiums was a desired goal of the legislature in enacting § 52-225a, we do not believe that the legislature intended to effectuate that goal at the expense of injured parties by negating a jury's award of economic damages irrespective of whether the items of damages corresponding with the collateral source benefit had been included in the jury's award. Moreover, our conclusion in the present case has no bearing upon the effect of § 52-225a to reduce economic damages awards, and thus potentially reduce insurance premiums, in cases wherein the fact finder's verdict includes items of damages for which the plaintiff has received a collateral source benefit.

by the fact finder, bears the burden of proving that the verdict includes items of damages for which the plaintiff has received a collateral source benefit. Specifically, the defendant who is seeking a collateral source reduction must, at the conclusion of the evidence, submit interrogatories to the jury concerning the specific items of damages included within the verdict.[6] Although we acknowledge that § 52-225a is silent concerning burdens of proof; see *Jones* v. *Kramer*, supra, 72 Conn. App. 796 n.4; we believe that placing the burden on the defendant to submit jury interrogatories is most consistent with the equitable balance that the statute seeks to strike between barring plaintiffs from recovering twice for the same loss, on the one hand, and preventing defendants from benefiting from reduced judgments due to collateral source payments, on the other. Moreover, because it is the defendant who is seeking to reduce the award, the defendant should bear the burden of proving that the items of damages corresponding with the desired collateral source reduction actually are included in the award.[7]

---

[6] The Connecticut Trial Lawyers Association proposes, in its amicus brief, that we require juries "to break down their economic damages on the verdict form into past medical, future medical, and all lost earnings." The argument for such a rule is that a rule "requiring specific interrogatories for every medical bill [as proposed by Judge Bishop in his dissent in *Jones* v. *Kramer*, supra, 72 Conn. App. 801, 803] is unfortunately cumbersome and unworkable." We do not believe, however, that requiring juries to break down their economic damages awards on the verdict form will be significantly more efficient than requiring them to perform the same function in response to jury interrogatories submitted by the defendant.

[7] The defendant asserts that requiring defendants to submit interrogatories to the jury in every case would be "unwieldy and contrary to the clear mandate of [§ 52-225a]." It is axiomatic, however, that in every tort action, the fact finder may award economic damages only if the plaintiff has proven those damages to a reasonable certainty and has shown that the defendant had proximately caused the damages. See *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 59, 717 A.2d 724 (1998); *Preston* v. *Keith*, 217 Conn. 12, 20, 584 A.2d 439 (1991). Therefore, in the present case, the jury presumably determined, for each item of damages awarded, that the plaintiff had proven these dual requirements of reasonable certainty and proximate cause. Specifically, the plaintiff submitted multiple

As we previously have stated, the jury in this case awarded the plaintiff a total of $15,000 in economic damages, without delineating the amount awarded for each specific item of damages. Therefore, it is not possible to know whether the economic damages awarded by the jury included any of the medical bills or other benefits paid by collateral sources.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court, and to remand the case to that court with direction to render judgment for the plaintiff in the amount of $50,000 in accordance with the jury's verdict.

In this opinion the other justices concurred.

items of economic damages, consisting of two categories: claimed medical expenses and lost wages. In awarding the plaintiff some, but not all, of his claimed economic damages, the jury necessarily made the determination that the plaintiff was entitled to some items of damages but not others, or was entitled to partial recovery for all items of damages. Accordingly, we cannot say that requiring the defendant to request, through interrogatories, that the jury break down its award of economic damages, would be particularly unwieldy. Moreover, this requirement would not be contrary to the legislative intent underlying § 52-225a. General Statutes § 52-572h (a) (1) defines the term "economic damages," as it applies in § 52-225a, as "compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages . . . ." Therefore, the statutory scheme recognizes that an economic damages award may consist of several different types of pecuniary loss.