MARY CARRANO, ADMINISTRATRIX (ESTATE OF PHILLIP J. CARRANO, JR.), ET AL. *v.* YALE-NEW HAVEN HOSPITAL ET AL.
(AC 22644)

Dranginis, West and McLachlan, Js.

Argued May 25—officially released August 24, 2004

*Jeffrey R. Babbin,* with whom, on the brief, was *Kenneth D. Heath,* for the appellants (named defendant et al.).

*Thomas J. Weihing,* with whom were *Thomas E. Mangines* and, on the brief, *John T. Bochanis,* for the appellee (named plaintiff).

*Opinion*

McLACHLAN, J. In this medical malpractice action, the defendants[1] appeal from the judgment of the trial

---

[1] The defendants on appeal are Yale-New Haven Hospital; Garth Ballantyne, a physician; and Mary Harris, a registered nurse. Two others, the defendant Andrew Elliot and the substitute defendant Barbara Kinder, executrix of the estate of the defendant Elton Cahow, moved successfully for a

court, rendered following a jury verdict, in favor of the plaintiff, Mary Carrano,[2] individually and as administratrix of the estate of her husband, Phillip J. Carrano, Jr. On appeal, the defendants claim that the court improperly (1) increased, sua sponte, the number of peremptory challenges allowed to the plaintiff in order to equalize her number of challenges with that of the several defendants, (2) admitted the testimony of the plaintiff's medical expert on causation of death, (3) concluded there was sufficient evidence of causation of death and (4) allowed the question of economic damages to reach the jury without an adequate evidentiary basis. We conclude that the court acted improperly with respect to the granting of peremptory challenges and, therefore, reverse the judgment of the trial court and remand the case for a new trial.[3]

Carrano was admitted to Yale-New Haven Hospital on March 12, 1992. He required treatment for a necrotic finger and a colonoscopy to determine whether and to what extent surgery would be an appropriate next step in treating his Crohn's disease. Carrano underwent the

directed verdict following the close of evidence. We refer in this opinion to Yale-New Haven Hospital, Ballantyne and Harris as the defendants. Our decision today does not reinstate the plaintiff's cause of action against Elliot or the estate of Cahow.

[2] During the pendency of litigation, the plaintiff has remarried and is now known as Mary Sholomicky. We shall refer to her as the plaintiff in order to distinguish her from her late husband, whom we shall refer to as Carrano.

[3] Because we conclude that a new trial is necessary, we need not consider the defendants' third claim regarding the sufficiency of the plaintiff's evidence. We do, however, consider the defendants' second claim concerning the admissibility of evidence because it is likely to recur at retrial.

Although the defendants' fourth claim also is likely to recur at retrial, it merits little discussion. They claim, essentially, that there was an inadequate evidentiary basis for the jury to calculate economic damages. We agree. Economic damages normally require nontestimonial evidence; *Giordano* v. *Giordano*, 39 Conn. App. 183, 207, 664 A.2d 1136 (1995); and must be proven to a reasonable certainty. *Jones* v. *Kramer*, 267 Conn. 336, 350 n.7, 838 A.2d 170 (2004). The plaintiff's evidence of economic damages was inadequate as a matter of law.

colonoscopy and treatment for the necrotic finger. He was released from Yale-New Haven on March 21, 1992, and died at home early the next morning. Thereafter, the plaintiff initiated this action.

I

The defendants first claim that the court improperly granted the plaintiff additional peremptory challenges not authorized by General Statutes (Rev. to 2001) §§ 51-241 and 51-243 (a). We agree.

Prior to jury selection, on April 24, 2001, the court increased, sua sponte, the number of the plaintiff's peremptory challenges from eight to twenty to equalize her number of challenges with that of the defendants. At that stage of the litigation, there were five defendants who claimed to lack a unity of interest[4] and, in accordance with §§ 51-241 and 51-243 (a),[5] the court granted

---

[4] The court appears to have concluded that the defendants lacked a unity of interest, given the number of peremptory challenges it awarded. That issue was not raised on appeal, nor was the issue of whether the plaintiff, whose sole individual claim was loss of consortium, had a unity of interest with Carrano's estate. We therefore do not address those issues.

"[A] 'unity of interest' means that the interests of the several plaintiffs or of the several defendants are substantially similar," which allows the court discretion to treat the several plaintiffs or the several defendants as a single party for the limited purpose of jury selection. General Statutes § 51-243 (a); see *Marshall* v. *Hartford Hospital*, 65 Conn. App. 738, 750, 783 A.2d 1085, cert. denied, 258 Conn. 938, 786 A.2d 425 (2001) (no unity of interest found where liability of each defendant separate and distinct from liability of others); see also Practice Book § 16-5.

[5] General Statutes (Rev. to 2001) § 51-241, entitled "Peremptory challenges in civil actions," provides: "On the trial of any civil action to a jury, each party may challenge peremptorily three jurors. Where the court determines a unity of interest exists, several plaintiffs or several defendants may be considered as a single party for the purpose of making challenges, or the court may allow additional peremptory challenges and permit them to be exercised separately or jointly. For the purposes of this section, a 'unity of interest' means that the interests of the several plaintiffs or of the several defendants are substantially similar."

General Statutes (Rev. to 2001) § 51-243 (a), entitled "Alternate jurors in civil cases," provides: "In any civil action to be tried to the jury in the Superior Court, if it appears to the court that the trial is likely to be protracted, the court may, in its discretion, direct that, after a jury has been selected, two

each defendant four peremptory challenges for a total of twenty. Given that there were at most two plaintiffs—the plaintiff acting in her individual and representative capacities—the maximum number of challenges to which the plaintiff was entitled by §§ 51-241 and 51-243 (a) was eight.

The court concluded that this twenty to eight disparity in peremptory challenges was unfair and decided to "level the playing field" by increasing the plaintiff's allotment of peremptory challenges to twenty.[6] The defendants took exception to the court's determination but were overruled. During jury selection, the plaintiff exercised fifteen[7] of her twenty peremptory challenges. At trial, the court directed a verdict for two of the defendant physicians.[8] The jury found the three remaining defendants liable and awarded approximately $3.4 million in total damages.

Our review of the court's decision to increase the plaintiff's number of peremptory challenges from eight

or more additional jurors shall be added to the jury panel, to be known as 'alternate jurors'. Alternate jurors shall have the same qualifications and be selected and subject to examination and challenge in the same manner and to the same extent as the jurors constituting the regular panel. In any case when the court directs the selection of alternate jurors, each party may peremptorily challenge four jurors. Where the court determines a unity of interest exists, several plaintiffs or several defendants may be considered as a single party for the purpose of making challenges, or the court may allow additional peremptory challenges and permit them to be exercised separately or jointly. For the purposes of this subsection, a 'unity of interest' means that the interests of the several plaintiffs or of the several defendants are substantially similar."

[6] The court stated: "I just think that it is a miscarriage of justice, a gross miscarriage of justice, to end up having the defendants exercise twenty peremptory challenges and the two plaintiffs eight. . . . [I]n my judgment . . . [i]t really makes a mockery of substantial justice to have such a . . . wholly disparate set of peremptory challenges . . . ."

[7] There is some question about the actual number of challenges that the plaintiff exercised because one of the jury selection sheets was lost; however, in her brief, the plaintiff concedes that she exercised fifteen challenges.

[8] See footnote 1.

to twenty is guided by our Supreme Court's recent decision in *Kalams* v. *Giacchetto*, 268 Conn. 244, 256–64, 842 A.2d 1100 (2004). "[T]he granting of more challenges than provided by law is subject to review for abuse of discretion. In conducting that review, we consider whether the granting of the challenges harmed either party or was inconsistent with an efficient and orderly judicial process." Id., 263–64.

The plaintiff argues that the court's discretion to grant additional peremptory challenges is broad enough to include the situation here, where the court awarded additional challenges to only one side in the litigation to equalize the two sides' control over jury selection. She also argues that her exercise of at least seven more peremptory challenges than prescribed by statute did not harm the defendants. We disagree with both arguments.

First, as to the issue of the breadth of a trial court's discretion, a careful reading of *Kalams* reveals a narrow discretion when applied to a case like the one now before us. *Kalams* refers only to the trial court's discretion to grant *each side* in litigation additional challenges. All of the relevant cases cited in *Kalams*, and *Kalams* itself, involve a court's decision to grant more peremptory challenges to each side. In fact, most of the cases discussed are criminal cases, which require an equal number of peremptory challenges for the state and the defendant. See, e.g., *State* v. *Day*, 233 Conn. 813, 845, 661 A.2d 539 (1995) (trial court may allow parties more peremptory challenges than provided by law); *State* v. *Hancich*, 200 Conn. 615, 624–26, 513 A.2d 638 (1986) (trial court, which had at outset of jury selection mistakenly granted each party eight peremptory challenges instead of four to which they were entitled, should have left mistake intact). Thus, the court was constrained by the number of peremptory challenges allowed by §§ 51-241 and 51-243 (a). We accordingly

conclude that the court improperly awarded the plaintiff additional peremptory challenges.

We next consider whether the defendants suffered harm. See *Kalams* v. *Giachetto*, supra, 268 Conn. 264. Here, the plaintiff's receipt of twelve more challenges than that to which she was entitled (of which she used seven) fundamentally altered the composition of the jury that decided the case in her favor. Prior to the adoption of the amendments to §§ 51-241 and 51-243 (a) adopting a "two to one rule,"[9] when only one side in litigation was granted additional peremptory challenges solely to lessen a disparity in challenges, the other side is harmed and a new trial is necessary. See *Marshall* v. *Hartford Hospital*, 65 Conn. App. 738, 744, 783 A.2d 1085, cert. denied, 258 Conn. 938, 786 A.2d 425 (2001).

A new trial is the only appropriate remedy "because the use of the challenges at the original trial can never be reconstructed. If each [side had the appropriate number of] challenges, a wholly different jury panel might have been selected." *Rivera* v. *Saint Francis Hospital & Medical Center*, 55 Conn. App. 460, 467, 738 A.2d

---

[9] The amendments became effective on October 1, 2001, and therefore the "two to one rule" was not in effect at the time of jury selection. Presently, the maximum disparity in peremptory challenges between plaintiffs and defendants allowed in civil cases is a ratio of two to one. Thus, if there are two plaintiffs and five defendants, all lacking a unity of interest, the defendants will be granted twenty peremptory challenges and the plaintiffs' total will be increased from eight to ten.

The statutes were both amended to include that "[a] unity of interest shall be found to exist among parties who are represented by the same attorney or law firm. In addition, there shall be a presumption that a unity of interest exists among parties where no cross claims or apportionment complaints have been filed against one another. In all civil actions, the total number of peremptory challenges allowed to the plaintiff or plaintiffs shall not exceed twice the number of peremptory challenges allowed to the defendant or defendants, and the total number of peremptory challenges allowed to the defendant or defendants shall not exceed twice the number of peremptory challenges allowed to the plaintiff or plaintiffs." Public Acts 2001, No. 01-152, §§ 1 and 2.

1151 (1999). We conclude that the court abused its discretion in granting additional peremptory challenges to the plaintiff, causing the defendants to suffer harm. Accordingly, a new trial is necessary.[10]

## II

The defendants next claim that the court improperly admitted the testimony of the plaintiff's only medical expert over their objections under *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). We conclude that the court properly admitted the testimony.

An autopsy determined that the cause of Carrano's death was pulmonary edema (fluid in the lungs). While it was not disputed that the pulmonary edema caused the death, the cause of the pulmonary edema itself was a main issue at trial.

The plaintiff's expert, Robert Pieroni, a physician board certified in internal medicine, theorized that the pulmonary edema was caused by a massive fluid overload, which Carrano's body could not sufficiently eliminate, essentially causing him to drown. Pieroni testified that the defendants negligently failed to address several treatable conditions that caused and exacerbated the fluid overload and that the defendants failed to alter or halt courses of treatment that were inadvisable for patients with signs of excess fluid.

Pieroni referred to his identification of a combination of causes leading to one result as a "multi-factorial" diagnostic method. The factors he identified as contrib-

---

[10] We note that the court's concerns about the discrepancy in peremptory challenges; see footnote 6; were well founded, especially in light of the amendments to §§ 51-241 and 51-243 (a). Nevertheless, those later adopted amendments have no effect on this case. If anything, the legislature's decision to amend the statutes confirms our understanding that the law, as it existed at the time of jury selection, prohibited the court's action.

uting to the pulmonary edema were massive edema or "anasarca" (excess fluids in the upper and lower extremities, sacrum and buttocks that caused noticeable and extreme swelling); progressive anemia (Carrano lost one third of his blood volume while at Yale-New Haven Hospital); sepsis; fever; pneumonitis; a low potassium-high sodium diet; non-steroidal anti-inflammatory drugs; and hospital-administered fluids including saline, intravenous antibiotics, and "Go-Lightly," a gallon of which Carrano drank to cleanse his colon for the colonoscopy. In sum, Pieroni testified that no single factor caused the pulmonary edema, but that the combination of those many factors caused it.

The defendants' experts testified that the pulmonary edema could not possibly have been caused by massive fluid overload given Carrano's relatively healthy heart and healthy kidneys.[11] They also offered alternate theories of causation and disputed the relevance or existence of many of the above enumerated factors.

Prior to and at trial, the defendants attacked the scientific reliability of Pieroni's testimony by filing a motion in limine to exclude it and later moving to have it stricken and judgment entered for the defendants. Each time, the court recognized that some of the factual bases for Pieroni's opinion were questionable, but it nonetheless sent Pieroni's testimony to the jury. The court reasoned that the defendants' purported attacks on the scientific reliability of Pieroni's method (the "multi-factorial" diagnostic method) were not attacks on his method. Rather, the defendants' attacks were on

---

[11] The defendants make much of the fact that Pieroni initially testified that Carrano's pulmonary edema was caused by congestive heart failure. On redirect examination, Pieroni corrected himself, noting that "in 99 percent of cases" the two terms are used interchangeably, but this was a rare case where that nomenclature would be incorrect. We accept Pieroni's revised testimony, considering that the trial court found that it was a matter of semantic and not scientific inaccuracy.

the underlying factual bases for Pieroni's conclusions, the existence of which would be disputed fact questions for the jury. The court also concluded that even if the defendants attacked the "multi-factorial" diagnostic method, they would have failed because "analysis of multiple signs and symptoms to arrive at a cause is a well recognized diagnostic methodology in the field of medicine and needs no explication."

We review rulings on the admissibility of expert testimony for abuse of discretion. "[U]nless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . .

"[T]he scientific evidence that forms the basis for the expert's opinion must undergo a validity assessment to ensure reliability. . . . In *Porter* . . . [the Connecticut Supreme Court] followed the United States Supreme Court's decision in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and held that scientific evidence should be subjected to a flexible test, with differing factors that are applied on a case-by-case basis, to determine the reliability of the scientific evidence. . . . [S]cientific evidence, and expert testimony based thereon, usually is to be evaluated under a threshold admissibility standard assessing the reliability of the methodology underlying the evidence and whether the evidence at issue is, in fact, derived from and based upon that methodology . . . ." (Citations omitted; internal quotation marks omitted.) *Maher* v. *Quest Diagnostics, Inc.*, 269 Conn. 154, 167–68, 847 A.2d 978 (2004).

Despite the court's considerable and active role in screening out unreliable expert testimony, "[a] judge frequently should find an expert's methodology helpful [and thus admissible] even when the judge thinks that the expert's technique has flaws sufficient to render

the [expert's] conclusions inaccurate. He or she will often still believe that hearing the expert's testimony and assessing its flaws was an important part of assessing what conclusion was correct and may certainly still believe that a jury attempting to reach an accurate result should consider the evidence." (Internal quotation marks omitted.) *State* v. *Porter*, supra, 241 Conn. 89.

We find that this was precisely the case here. Although the court recognized a number of possible flaws in Pieroni's factual assumptions and interpretations, it found no fault with the "multi-factorial" diagnostic method. The defendants have offered no justification for rejecting the court's conclusion that "analysis of multiple signs and symptoms to arrive at a cause is a well recognized diagnostic methodology in the field of medicine and needs no explication." See *Maher* v. *Quest Diagnostics, Inc.*, supra, 269 Conn. 170 (some scientific principles are so well established that they require no threshold admissibility inquiry).

The court properly allowed the jury to be the arbiter of fact. "Once the methodology underlying an expert conclusion has been sufficiently established, the mere fact that controversy, or even substantial controversy, surrounds that conclusion goes only to the weight, and not to the admissibility, of such testimony." *State* v. *Porter*, supra, 241 Conn. 83. The defendants assail the "multi-factorial" approach only insofar as it was applied using facts they disputed and led to a conclusion with which they disagreed. They offer nothing to suggest that the method itself is unreliable or that Pieroni's review of the records was inadequate. More importantly, the defendants did not do so at trial. We accordingly conclude that the court did not abuse its discretion in admitting Pieroni's testimony.

The judgment against the defendants Yale-New Haven Hospital, Garth Ballantyne and Mary Harris is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.