## MARY PIKULSKI *v.* WATERBURY HOSPITAL HEALTH CENTER
## (SC 17048)

Borden, Norcott, Katz, Palmer and Zarella, Js.

1

Argued March 22—officially released May 18, 2004

*Hugh D. Hughes*, with whom, on the brief, were *William F. Gallagher* and *William P. Yelenak*, for the appellant (plaintiff).

*James P. Brennan*, for the appellee (defendant).

KATZ, J. This certified appeal is controlled by our recent decision in *Jones* v. *Kramer*, 267 Conn. 336, 348, 838 A.2d 170 (2004), wherein we concluded that General Statutes § 52-225a,[1] "when viewed in the context of the purposes of tort reform, must be construed to allow *only payments specifically corresponding with items of damages included in the jury's verdict* to be deducted as collateral sources from the economic damages award." (Emphasis added.) Because the Appellate Court in the present case determined that the amount of economic damages awarded to the plaintiff, Mary Pikulski, must be reduced by the *total amount* paid by collateral sources for her medical bills, less the sum of

---

[1] General Statutes § 52-225a provides: "(a) In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death occurring on or after October 1, 1987, or (2) personal injury or wrongful death, arising out of the rendition of professional services by a health care provider, occurring on or after October 1, 1985, and prior to October 1, 1986, if the action was filed on or after October 1, 1987, and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for (1) a collateral source for which a right of subrogation exists and (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h.

"(b) Upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment.

"(c) The court shall receive evidence from the claimant and any other appropriate person concerning any amount which has been paid, contributed, or forfeited, as of the date the court enters judgment, by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death."

the costs of the benefits and an amount equal to the reduction in economic damages attributable to the plaintiff's own negligence; *Pikulski* v. *Waterbury Hospital Health Center*, 77 Conn. App. 234, 822 A.2d 358 (2003); we reverse the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following relevant facts. "On January 28, 1994, the plaintiff was injured when she slipped and fell on the . . . premises [of the defendant, Waterbury Hospital Health Center] for which she claimed damages in an action in negligence. At the trial, the plaintiff introduced evidence of medical bills in the amount of $92,013.23. The jury returned a verdict in favor of the plaintiff, but found that both parties had contributed to the plaintiff's fall and that her negligence amounted to 49 percent of the total negligence. The jury assessed economic damages at $48,980 and noneconomic damages at $44,880 for total damages of $93,860 before any reduction for the plaintiff's negligence or collateral source payments.

"The defendant filed a motion for a collateral source hearing pursuant to § 52-225a and Practice Book § 16-35. The total collateral source payments were $84,279.05. The parties agreed that the amount of the premiums paid by or on behalf of the plaintiff from 1994 through 2000, the years in which she had received treatment, was $26,324.46. The [trial] court, reasoning that the purpose of § 52-225a is to allow the plaintiff to keep as economic damages the amount that has not been received in the form of insurance payments, determined that the collateral source reduction should be calculated by using the economic damages actually awarded rather than the amount claimed by either party prior to a verdict. It thereupon used the amount of economic damages actually awarded, $48,980, as the gross amount of collateral source payments that could be considered. It then reduced that amount by the sum of the unpaid [medical] bills, $7700, and by 49 percent

of the economic damages awarded, $24,000, an amount equal to the amount of reduction of the economic damages attributable to the plaintiff's own negligence, to produce a figure of $17,280. The [trial] court denominated that figure to be the net collateral source reduction before the offset for premiums paid by or on behalf of the plaintiff. The court determined that the plaintiff was entitled to offset the net collateral source reduction of $17,280 by the total amount of the premiums paid, $26,324.46, thus reducing to zero the collateral source reduction. The court therefore rendered judgment for the plaintiff to recover $45,991.40.[2]

"The defendant claim[ed] that the [trial] court improperly applied § 52-225a in calculating the collateral source reduction. It assert[ed] that the amount of the collateral source reduction is the total amount paid by collateral sources for the medical bills less the sum of the costs of the benefits and an amount equal to the reduction in economic damages attributable to the plaintiff's negligence.

"The plaintiff claim[ed] that because the purpose of § 52-225a is to preclude a possible double recovery, only the payments made for those medical bills determined by the jury to have been related to the case may be considered in determining the collateral source reduction. She maintain[ed] that only payments for those medical bills included in the award of economic damages may be considered as collateral source payments and that the amount of the collateral source reduction may not exceed the amount of the economic damages." Id., 236–37.

The Appellate Court agreed with the defendant and reversed the judgment of the trial court. Id., 238. On

[2] "The [trial] court awarded the plaintiff 49 percent of the damages [of $93,860] rather than reducing the damages award by 49 percent." *Pikulski* v. *Waterbury Hospital Health Center*, supra, 77 Conn. App. 237 n.2.

the basis of its opinion in *Jones* v. *Kramer*, 72 Conn. App. 789, 792, 806 A.2d 606 (2002), which this court subsequently reversed; *Jones* v. *Kramer*, supra, 267 Conn. 336; the Appellate Court rejected the claim that only payments for medical bills specifically included in the jury's verdict may be deducted as collateral sources and determined that "§ 52-225a requires the reduction of economic damages by the total of all collateral source payments received, less the total of premiums paid to secure the collateral sources." (Internal quotation marks omitted.) *Pikulski* v. *Waterbury Hospital Health Center*, supra, 77 Conn. App. 237–38.

We granted the plaintiff's petition for certification for appeal from the Appellate Court limited to the following issue: "Did the Appellate Court properly conclude that an award for economic damages can be reduced by payments from collateral sources for medical bills for which the jury did not award the plaintiff damages?" *Pikulski* v. *Waterbury Hospital Health Center*, 265 Conn. 907, 908, 831 A.2d 250 (2003). On the basis of our decision in *Jones* v. *Kramer*, supra, 267 Conn. 348, that "only payments specifically corresponding with items of damages included in the jury's verdict [are] to be deducted as collateral sources from the economic damages award," we reverse the judgment of the Appellate Court.[3] As in *Jones*, we further conclude that "the defendant, as the party seeking to reduce the amount of economic damages awarded by the fact finder, bears the burden of proving that the verdict includes items of damages for which the plaintiff has received a collateral source benefit. Specifically, the defendant who is seek-

---

[3] Following our decision in *Jones* v. *Kramer*, supra, 267 Conn. 336, we asked both parties to submit supplemental briefs to address the impact of that decision on the outcome of the present case. The defendant argued that, unlike in *Jones*, the trial court and the Appellate Court in this case "only addressed evidence concerning past medical expenses when determining the collateral source reduction pursuant to § 52-225a." We fail to see why that distinction should make a difference in our interpretation of that statute.

ing a collateral source reduction must, at the conclusion of the evidence, submit interrogatories to the jury concerning the specific items of damages included within the verdict. . . . [P]lacing the burden on the defendant to submit jury interrogatories is most consistent with the equitable balance that the statute seeks to strike between barring plaintiffs from recovering twice for the same loss, on the one hand, and preventing defendants from benefiting from reduced judgments due to collateral source payments, on the other. Moreover, because it is the defendant who is seeking to reduce the award, the defendant should bear the burden of proving that the items of damages corresponding with the desired collateral source reduction actually are included in the award."[4] (Citation omitted.) Id., 349–50.

As we previously have recited, although the plaintiff presented evidence that she had incurred $92,013.23 in medical expenses, $84,279.05 of which were paid by

---

[4] The defendant further contends that requiring defendants to submit interrogatories to the jury in every case "will turn jury deliberations into [a] quagmire of billing invoice review panels." Therefore, the defendant urges us to overrule our decision in *Jones*. We addressed a similar contention in *Jones*, however, and concluded that such a requirement would not be particularly unwieldy. Specifically, we noted: "It is axiomatic . . . that in every tort action, the fact finder may award economic damages only if the plaintiff has proven those damages to a reasonable certainty and has shown that the defendant had proximately caused the damages. . . . Therefore, in the present case, the jury presumably determined, for each item of damages awarded, that the plaintiff had proven these dual requirements of reasonable certainty and proximate cause. Specifically, the plaintiff submitted multiple items of economic damages, consisting of two categories: claimed medical expenses and lost wages. In awarding the plaintiff some, but not all, of his claimed economic damages, the jury necessarily made the determination that the plaintiff was entitled to some items of damages but not others, or was entitled to partial recovery for all items of damages. Accordingly, we cannot say that requiring the defendant to request, through interrogatories, that the jury break down its award of economic damages, would be particularly unwieldy." (Citations omitted.) *Jones* v. *Kramer*, supra, 267 Conn. 350–51 n.7. We therefore decline the defendant's invitation to overrule our decision in *Jones*.

collateral sources,[5] the jury in this case awarded her $48,900 in economic damages. We further note that, as in *Jones*, the jury did not delineate the amount awarded for each specific item of damages.[6] As we stated in *Jones*, "only payments specifically corresponding with items of damages included in the jury's verdict [are] to be deducted as collateral sources from the economic damages award"; id., 348; not the total amount paid by collateral sources for the medical bills. Therefore, the trial court properly rejected the defendant's claim that the amount of economic damages awarded to the plaintiff must be reduced by $84,279.05, the total amount paid by collateral sources for the medical bills, and properly determined that the collateral source reduction must be calculated by using the economic damages actually awarded to the plaintiff.

Finally, we turn to the issue of whether the trial court properly offset the net collateral source reduction—the amount of economic damages actually awarded less the $7700 in unpaid bills and less the amount equal to the amount of reduction attributable to the plaintiff's own negligence—by the amount of premiums the plaintiff had paid for her insurance coverage for the years in which she received treatment. In the present case, the plaintiff claimed medical expenses for the years 1994 through 2000, and the parties stipulated that the plaintiff had paid insurance premiums for those years in the total amount of $26,324.46. Despite that stipulation, the defendant nevertheless claims on appeal that the trial court should not have applied a credit for the insurance premiums covering the entire period for all the medical bills introduced at trial because it could

[5] It is undisputed that approximately $7700 of the medical expenses remained unpaid.

[6] Although in her complaint the plaintiff claimed lost wages and lost earning capacity, no evidence of either was presented at trial. Therefore, the economic damage award was related solely to the plaintiff's medical bills.

not determine what bills the jury accepted as related to the injury in question. Consequently, according to the defendant, rather than assume that the bills awarded by the jury represented amounts for all the years of treatment, before applying a credit, the court should have determined whether the full amount of premiums paid during the course of treatment corresponded to the treatment.

As we have stated, on the basis of the parties' stipulation, the trial court properly applied a credit for $26,324.46, the full amount of premiums paid from 1994 through 2000.[7] We take this opportunity, however, to set forth the procedure by which trial courts should make this determination in the future. We reiterate that the burden is on the defendant, as the party seeking a collateral source reduction, to submit interrogatories to the jury concerning the specific items of damages included within the verdict. Once the defendant, through those interrogatories, proves that the verdict includes items of damages for which the plaintiff has received a collateral source benefit, in order to get the full offset pursuant to § 52-225a (c), the plaintiff has the obligation to itemize the insurance premiums to demonstrate the correlation between the medical costs awarded and the years in which the premiums were paid. In other words, after the defendant establishes that the items of damages corresponding with the desired collateral source reduction actually were included in the award, the plaintiff, in order to get the full offset, must establish that the premiums paid to secure the right to any collateral source benefit received were for the years in which the jury awarded items of damages.

---

[7] Indeed, because the defendant did not establish that the specific items of economic damages awarded by the jury were attributable only to *some* of the years in which collateral sources had been paid, the trial court's only option was to credit the plaintiff for the full amount of premiums paid during the course of her treatment.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for further proceedings.[8]

In this opinion the other justices concurred.

---

[8] As we have stated, the trial court rendered judgment for the plaintiff in the amount of $45,991, an award based on its miscalculation of the reduction of the economic damages attributable to the plaintiff's own negligence. See footnote 2 of this opinion. In specific, the trial court awarded the plaintiff 49 percent of the damages rather than reducing the damages by 49 percent. Therefore, a recalculation limited to the correction of that error is required.