******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMES MARCIANO *v.* DIEGO JIMENEZ ET AL.
(SC 19547)

Palmer, Zarella, Eveleigh, McDonald, Robinson and Vertefeuille, Js.

*Argued October 20—officially released December 22, 2016\**

*Karen L. Dowd*, with whom was *Brendon P. Levesque*, for the appellant (plaintiff).

*Christopher P. Kriesen*, with whom, on the brief, was *Kaelah M. Smith*, for the appellees (defendants).

*Opinion*

VERTEFEUILLE, J. When a plaintiff receives an award of damages in a civil action for personal injuries, General Statutes § 52-225a[1] requires the trial court to reduce the award to reflect collateral source payments received by the plaintiff. Section 52-225a makes an exception to the required deduction, however, for collateral source payments for which a right of subrogation, or reimbursement, exists. The sole issue in this appeal is whether § 52-225a precludes the trial court from making any collateral source reduction, either in full or in part, when a right of subrogation exists. We conclude that it does.

The following facts and procedural history are relevant to the present appeal. The plaintiff, James Marciano, was injured in a motor vehicle accident and brought a personal injury action against the defendants, Diego Jiminez and Phoenix Limousine Service, LLC.[2] Following trial, the jury returned a verdict in favor of the plaintiff and awarded him $84,283.67 in economic damages and $40,000 in noneconomic damages, for a total of $124,283.67. Subsequently, the defendants moved for a collateral source reduction to the award pursuant to § 52-225a. In their motion and during a hearing before the court, the defendants argued that the economic damages award should be reduced to account for the fact that the plaintiff had paid only $1941.49 toward his medical expenses, and his health insurance coverage had covered the remainder. The plaintiff's health insurance coverage was provided by a self-funded plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. (plan). The plan was offered through his employer, United Parcel Service (UPS), and was managed by Aetna Insurance Company.

In response to the defendants' motion for a collateral source reduction, the plaintiff objected[3] to any reduction on the ground that § 52-225a precludes a collateral source reduction when a right of subrogation exists, as it does in the present case. The plaintiff further claimed that even if a reduction was appropriate under § 52-225a, the defendants had not met their burden of proving that the expenses at issue were deductible collateral sources.[4] See footnote 1 of this opinion.

The plaintiff provided the court with a copy of the plan[5] and an e-mail to the plaintiff's counsel from an agent on behalf of UPS establishing "[t]hat UPS will have a valid, enforceable lien or subrogation rights upon payment of the judgment . . . ." Another letter from an agent handling the plan's liens further indicated that UPS would accept $6940.19 in full satisfaction of the right of subrogation in the event of a settlement of the case for $120,000. The plaintiff further contended that if the court decided that a reduction was appropriate,

the amount of the reduction should be offset by the cost to obtain the collateral source benefits, which was calculated to be $58,042.43.[6]

During the hearing on the defendants' motion for a collateral source reduction, the defendants argued that the plaintiff's reading of § 52-225a to prohibit any collateral source reduction when a right of subrogation exists is contrary to the purpose of the statute, which is to preclude plaintiffs from obtaining double recoveries. Contending that the letter established an agreement to accept $6940.19 and therefore "extinguished" the right of subrogation, the defendants urged the court to order a collateral source reduction of $60,653.75.[7]

In response, the plaintiff argued that the letter merely indicated a willingness to accept a lesser amount than full reimbursement in the event of settlement and did not extinguish the right of subrogation. The plaintiff further contended that § 52-225a plainly provides that if any right of subrogation exists, as it does in the present case, no collateral source reduction may be made.

In its memorandum of decision, the court ordered a collateral source reduction, which it calculated by subtracting the cost to secure the collateral source benefits—$58,042.43—from the payments made to the plaintiff—$82,342.18. This amounted to a collateral source reduction of $24,299.75. To calculate the judgment amount, the court subtracted the collateral source reduction of $24,299.75 from the verdict of $124,283.67. The court then rendered judgment of $99,983.92, plus costs, from which the plaintiff now appeals.[8] He claims that the trial court improperly ordered a collateral source reduction when there was a right of subrogation, in violation of § 52-225a.

In order to address the plaintiff's claim, we must interpret and apply the provisions of § 52-225a. In considering this question of statutory construction, we apply plenary review. *Jones* v. *Kramer*, 267 Conn. 336, 343, 838 A.2d 170 (2004). Moreover, because we have previously determined that § 52-225a is in derogation of common law; see id., 345–49; it must be strictly construed and may not be "extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction." (Internal quotation marks omitted.) Id., 348. Finally, it is well established that we interpret statutes in accordance with the plain meaning rule and will not consider extratextual evidence of the meaning of a statute unless the text is ambiguous or would yield an absurd or unworkable result. General Statutes § 1-2z.

We start our analysis with the text of § 52-225a (a), which provides in relevant part that "[i]n any civil action . . . wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages . . .

*except that there shall be no reduction for . . . a collateral source for which a right of subrogation exists . . . .*" (Emphasis added.)

The plaintiff contends that the language of § 52-225a is plain and unambiguous and clearly provides that "[i]f there is a right of subrogation, whether for all or part of the collateral source amount, there shall be no collateral source reduction." We agree. First, in the phrase "a right of subrogation exists," the legislature chose to use the expansive term "a," which commonly means "any." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003). This court has interpreted the term "any" to mean "all or every" and has "presume[d] that the legislature, in using the word any to modify [another] term . . . intended that term to be broad, rather than restrictive, in scope." (Internal quotation marks omitted.) *Gipson* v. *Commissioner of Correction*, 257 Conn. 632, 640, 778 A.2d 121 (2001). Here, the legislature's use of the broad term "a" to modify the term "right," coupled with the lack of any restrictive or qualifying language, supports the plaintiff's contention that if there is *any* right of subrogation, a reduction is precluded.

Section 52-225a (a) further provides that if there is a right of subrogation for a collateral source, "there *shall be no reduction*" of the damages award. (Emphasis added.) The phrase "*no reduction*" in § 52-225a (a) leaves no doubt that if a right of subrogation exists, the trial court cannot order a collateral source reduction of any amount. There is no qualifying language to suggest that a partial reduction is appropriate or within the trial court's discretion. The defendants do not dispute that the use of the term "shall" in § 52-225a indicates that the provision is mandatory rather than directory and, thus, precludes a reduction. See *State* v. *Banks*, 321 Conn. 821, 840, 146 A.3d 1 (2016) (generally, use of term "shall" connotes mandatory command).[9]

In the absence of restrictive or qualifying language, and in view of our mandate to strictly construe the statute, we reject the defendants' claim that § 52-225a requires a partial collateral source reduction even when a right of subrogation exists. As this court has emphasized, "a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature." (Internal quotation marks omitted.) *Cruz* v. *Montanez*, 294 Conn. 357, 370, 984 A.2d 705 (2009). Construing the language of § 52-225a strictly, as we must, we conclude that when any right of subrogation exists, whether in full or in part, for a collateral source,

§ 52-225a precludes the trial court from ordering any collateral source reduction at all.

We are not persuaded by the defendants' claim that such a construction of § 52-225a would lead to the absurd result of a windfall for the plaintiff. Pointing to our decision in *Jones* v. *Riley*, 263 Conn. 93, 103, 818 A.2d 749 (2003), the defendants argue that the legislature's purpose in adopting § 52-225a was to preclude double recoveries for plaintiffs. They contend that because the foregoing construction of § 52-225a contravenes this intent and leads to a bizarre result, we must consult the legislative history of § 52-225a to ascertain its meaning. See General Statutes § 1-2z. We disagree.

This court has explained that the legislature, in enacting § 52-225a, sought to achieve an "equitable balance . . . between barring plaintiffs from recovering twice for the same loss, on the one hand, and preventing defendants from benefiting from reduced judgments due to collateral source payments, on the other." (Internal quotation marks omitted.) *Pikulski* v. *Waterbury Hospital Health Center*, 269 Conn. 1, 7, 848 A.2d 373 (2004). We have also recognized, in discussing the historical underpinnings of the collateral source rule, that "[t]he reason for the [collateral source] rule . . . is that a windfall ought not to be granted to a defendant . . . [and that] [i]f there must be a windfall certainly it is more just that the injured person shall profit therefrom, rather than the wrongdoer shall be relieved of his full responsibility for his wrongdoing." (Internal quotation marks omitted.) *Saint Bernard School of Montville, Inc.* v. *Bank of America*, 312 Conn. 811, 841, 95 A.3d 1063 (2014). In addition, we have emphasized that characterizing "insurance proceeds as pure double recovery overlooks the fact that the plaintiff presumably paid premiums to obtain those proceeds." Id., 841–42. In enacting § 52-225a, the legislature has attempted to achieve an "equitable balance . . . ." *Pikulski* v. *Waterbury Hospital Health Center*, supra, 7. In view of this history, we cannot conclude that the possibility of a windfall for a plaintiff is a bizarre result. We therefore reject the defendants' claim that we must consult the legislative history of § 52-225a to determine its meaning.

Applying the provisions of § 52-225a to the facts of the present case, we conclude that the trial court improperly ordered a collateral source reduction. At trial and during argument before this court, the defendants acknowledged that the health insurance plan that covered the plaintiff contains a right of subrogation.[10] In addition, the trial court's memorandum of decision refers to "$6940.19 (amount agreed to accept in satisfaction of UPS' right to reimbursement)," thus acknowledging the existence of a right of subrogation. Under the plain and unambiguous meaning of § 52-225a, the trial court, having found that a right of subrogation exists, improperly ordered a collateral source reduction

of the award of economic damages to the plaintiff.

The judgment is reversed and the case is remanded to the trial court with direction to reinstate the original verdict and to render judgment in accordance with the verdict.

In this opinion the other justices concurred.

* December 22, 2016, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 52-225a provides in relevant part: "(a) In any civil action . . . wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages . . . by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid, contributed or forfeited under subsection (c) of this section, except that there shall be no reduction for (A) a collateral source for which a right of subrogation exists . . . .

"(b) Upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment. . . . [E]vidence that an insurer paid less than the total amount of any bill generated by [a provider] . . . shall be admissible as evidence of the total amount of collateral sources which have been paid for the benefit to the claimant as of the date the court enters judgment.

"(c) The court shall receive evidence from the claimant and any other appropriate persons concerning any amount which has been paid, contributed or forfeited, as of the date the court enters judgment, by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death."

Under General Statutes § 52-225b, " '[c]ollateral sources' means any payments made to the claimant, or on his behalf, by or pursuant to: (1) Any health or sickness insurance, automobile accident insurance that provides health benefits, and any other similar insurance benefits, except life insurance benefits available to the claimant . . . or (2) any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the costs of hospital, medical, dental or other health care services. 'Collateral sources' do not include amounts received by a claimant as a settlement."

[2] Kevin Bailey was named as a defendant in an apportionment complaint that was withdrawn before trial. He is not a party in the present appeal.

[3] The plaintiff filed an objection and three supplemental objections to the defendants' motion for a collateral source reduction.

[4] Because the plan is subject to ERISA, the plaintiff also argued that a collateral source reduction under § 52-225a was preempted by ERISA. The plaintiff has raised that issue on appeal as well, but we need not consider it because we conclude that the trial court improperly ordered a collateral source reduction under § 52-225a.

[5] The plan provides in relevant part that it includes a "right to seek reimbursement of expenses that are paid by the [p]lan on behalf of you or your covered dependents . . . if those expenses are related to the acts of a third party . . . . The [p]lan may seek reimbursement of these expenses from any recovery you may receive from the third party or another source, including from any insurance proceeds, settlement amounts or amounts recovered in a lawsuit."

[6] The cost of $58,042.43 was comprised of the plaintiff's contribution to the plan of $14,748.24, UPS' contribution to the plan of $36,354, and the agreement to accept $6940.19 to satisfy the right of subrogation in the event of a settlement of $120,000.

[7] The total figure urged by the defendants was derived from the award of economic damages, $84,283.67, minus $1941.49, the plaintiff's payment toward his medical expenses, minus $6940.19, the amount UPS would accept in full satisfaction of the right to subrogation, and minus $14,748.24, the plaintiff's contribution to the plan. It did not include the $36,354 amount of UPS' contribution to the plan.

[8] The plaintiff appealed to the Appellate Court and this court transferred

the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[9] The defendants do not dispute that the term "shall" is mandatory in the phrases "the court shall reduce the amount of such award which represents economic damages," and "there shall be no reduction . . . for a collateral source for which a right of subrogation exists . . . ." General Statutes § 52-225a (a). They argue, however, that in the present case, where the right of subrogation was either "extinguished" or limited to $6940.19, the trial court was required to reduce the economic damages award by the total of the collateral source payments to the plaintiff minus the amount paid to secure that benefit. For the reasons set forth in this opinion, we disagree and conclude that no collateral source reduction was permitted in this case.

[10] We are not persuaded by the defendants' argument that the right of subrogation ceased to exist with the letter indicating that UPS would accept $6940.19 in satisfaction of the right of subrogation. First, the trial court made no such finding. Second, there is no evidence that the plaintiff had agreed to the terms set forth in the letter. Finally, the letter discusses the potential satisfaction of the right of subrogation in the context of a possible settlement. As the facts of this case indicate, there was no settlement and the matter proceeded to trial and verdict.

In addition, we are not convinced by the defendants' alternative argument that because the letter indicated that the right of subrogation would be satisfied with payment of $6490.19, the trial court was required to make a collateral source reduction to the extent that the collateral source payment exceeded that amount. As we have concluded previously in this opinion, § 52-225a does not permit a collateral source reduction, either in part or in full, if there is a right of subrogation.

———————————————————