******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# NATIONAL BANK TRUST *v.* ILYA YUROV ET AL.
## (AC 46023)

Alvord, Cradle and Westbrook, Js.

*Syllabus*

Pursuant to statute (§ 50a-34 (b) (3)), a foreign judgment need not be recognized if the cause of action on which the judgment is based is repugnant to the public policy of this state.

The plaintiff bank, the majority of which was allegedly owned by the Central Bank of the Russian Federation, sought to enforce a foreign judgment against the defendant B, a shareholder of the plaintiff. The plaintiff filed a certification of the foreign judgment in the Superior Court, alleging that the judgment had not been satisfied, that the enforcement of the judgment had not been stayed, and that B owned property in Avon. B filed a motion to open and either dismiss or stay the enforcement of the certified foreign judgment, arguing, inter alia, that the issuance of a federal executive order and a United States Department of the Treasury directive related to, inter alia, certain transactions involving the Central Bank of the Russian Federation prohibited the trial court from enforcing the foreign judgment pursuant to § 50a-34 (b) (3). The trial court denied B's motion to open, and B appealed to this court. *Held* that the trial court properly denied B's motion to open: B did not challenge on appeal the court's determination that the cause of action on which the foreign judgment was based was not repugnant to the public policy of this state; moreover, this court rejected B's claim that this court should interpret § 50a-34 (b) (3) to apply to the foreign judgment itself and not merely to the cause of action on which the judgment was based, as that interpretation was inconsistent with the plain language of § 50a-34 (b) (3).

Argued December 6, 2023—officially released February 6, 2024

*Procedural History*

Action to enforce a foreign judgment, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Baio, J.*, denied the defendant Sergey Belyaev's motion to open and dismiss or stay the enforcement of the certified foreign judgment, from which the defendant Sergey Belyaev appealed to this court. *Affirmed.*

*Jeffrey Hellman*, for the appellant (defendant Sergey Belyaev).

*Kellianne Baranowsky*, with whom, on the brief, was *Jeffrey M. Sklarz*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant Sergey Belyaev[1] appeals from the trial court's denial of his second motion to open and dismiss or stay the enforcement of a certified foreign judgment filed by the plaintiff, National Bank Trust. On appeal, the defendant claims that the court improperly denied the motion to open the judgment pursuant to General Statutes § 50a-34 (b) (3). We disagree and, accordingly, affirm the judgment of the court.

The following procedural history, as set forth in a prior opinion of this court, is relevant to the resolution of the defendant's claim on appeal. "On January 23, 2020, the Commercial Court of the Queen's Bench Division of the High Court of Justice of England and Wales (UK court) issued a judgment in favor of the plaintiff, finding that the plaintiff had suffered significant financial losses as a result of fraud perpetrated by the defendant and certain of his codefendants.[2] On June 30, 2020, the plaintiff filed a certification of the judgment in the Superior Court pursuant to General Statutes §§ 50a-33 and 52-605 (a).[3] In the certification, which was signed by counsel for the plaintiff, the plaintiff alleged that the judgment had not been satisfied, that the enforcement of the judgment had not been stayed, and that the approximate amount due to the plaintiff, as of June 12, 2020, was $900 million. The certification also alleged that the defendant owns property located at 85 Bishop Lane in Avon.

"On August 17, 2020, the defendant filed a motion to open and either dismiss or stay the enforcement of the certified judgment on the grounds that the foreign judgment was not entitled [to] recognition because (1) it was not a judgment of a 'foreign state granting or denying recovery of a sum of money' as required by [General Statutes] § 50a-31 (2); (2) it was not a 'final and conclusive' judgment under [General Statutes] § 50a-32 because it was 'in the process of being appealed'; (3) the certification was signed by counsel for the plaintiff, rather than the judgment creditor, as required by §§ 50a-33 and 52-605; (4) the defendant was entitled to a stay of the enforcement of the judgment because he was in the process of appealing it; and (5) the UK court did not have personal jurisdiction over the defendant. On September 29, 2020, the court summarily denied the defendant's motion." (Footnotes in original.) *National Bank Trust* v. *Yurov*, 210 Conn. App. 776, 778–79, 271 A.3d 171 (2022). The defendant filed an appeal with this court and sought an articulation of the court's denial of his motion. Id., 779.

"In its articulation, the court indicated that it had considered and rejected all of the arguments raised by the defendant in his motion to open and either dismiss or stay the enforcement of the certified judgment. The court held that the certified judgment was a final and

conclusive foreign judgment that granted the recovery of a sum of money, that the plaintiff's counsel was not prohibited from signing the certification of that judgment, that the defendant had waived the issue of personal jurisdiction when he appeared before the UK court, that the defendant did not dispute receiving a copy of the filed certification, and that there was no appeal pending of the certified judgment." Id., 780. This court affirmed the court's denial of the defendant's first motion to open. Id., 788.

While the first appeal was pending, on May 25, 2021, the defendant filed a second motion to open the judgment. The defendant argued, inter alia, that the judgment should be opened in accordance with § 50a-34 (b) (3) because, on April 15, 2021, President Joseph R. Biden, Jr., had issued Executive Order No. 14,024 pursuant to the International Emergency Economic Powers Act, 50 U.S.C. § 1701 et seq., the National Emergencies Act, 50 U.S.C. § 1601 et seq., § 212 (f) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1182 (f), and 3 U.S.C. § 301 (Executive Order);[4] see Executive Order No. 14,024, 86 Fed. Reg. 20,249 (April 19, 2021), and the Office of Foreign Assets Control of the United States Department of Treasury (OFAC) had issued a directive pursuant to the Executive Order, titled "Directive 4 Under Executive Order 14,024: Prohibitions Related to Transactions Involving the Central Bank of the Russian Federation [CBR], the National Wealth Fund of the Russian Federation, and the Ministry of Finance of the Russian Federation,"[5] both of which the defendant argued prohibited the enforcement of the judgment. In support of this contention, he argued, inter alia, that the court need not recognize a foreign judgment if either the judgment, or its underlying cause of action, is repugnant to public policy.[6]

On June 25, 2021, the plaintiff filed an objection to the defendant's second motion to open. The plaintiff argued, inter alia, that the defendant's second motion to open should be denied because the cause of action on which the judgment is based is not repugnant to the public policy of the state of Connecticut as expressly required by § 50a-34 (b) (3).

The court, *Baio*, *J.*, held oral argument on the defendant's second motion to open on October 11, 2022. On November 2, 2022, the court issued a memorandum of decision denying the defendant's second motion to open. In its conclusion, the court determined that the language of the relevant statute, § 50a-34 (b) (3), involves the consideration of whether the *cause of action* on which the judgment is based would conflict with the public policy of the state. The court concluded that consideration of whether the resulting *judgment* would conflict with public policy was outside the ambit of § 50a-34 (b) (3). The court determined that "the plaintiff's argument is correct that the defendant has pro-

vided no evidence of a public policy of the United States or the state that is in conflict with the UK judgment. The motion to open judgment on this basis is denied." This appeal followed.

We first set forth our standard of review. "[I]ssues of statutory interpretation constitute questions of law over which the court's review is plenary. The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [the court's] fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Commissioner of Public Health* v. *Colandrea*, 221 Conn. App. 631, 654, 302 A.3d 370 (2023), cert. denied, 348 Conn. 932,  A.3d  (2024).

We now turn to the defendant's claim on appeal that the court improperly denied his second motion to open under § 50a-34 (b) (3).[7] Section 50a-34, titled "Grounds for nonrecognition," is part of Connecticut's Uniform Foreign Money-Judgments Recognition Act, codified at General Statutes § 50a-30 et seq., and provides in relevant part: "(b) A foreign judgment need not be recognized if . . . (3) The *cause of action* on which the judgment is based is repugnant to the public policy of this state . . . ." (Emphasis added.) General Statutes § 50a-34 (b) (3). The defendant maintains that the trial court adopted "a very restrictive view" of the statute and argues that this court should interpret § 50a-34 (b) (3) to apply "to the judgment itself and not merely the cause of action." We disagree.

"[A] court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature." (Internal quotation marks omitted.) *Marciano* v. *Jiminez*, 324 Conn. 70, 77, 151 A.3d 1280 (2016). The defendant's interpretation is inconsistent with the

plain language of § 50a-34 (b) (3), which directs the court to determine whether "[t]he *cause of action* on which the judgment is based is repugnant to the public policy of this state." Thus, we reject the defendant's proposed interpretation.[8]

We also note that the defendant's only claim on appeal relates to whether the court properly interpreted § 50a-34 (b) (3). As the plaintiff recognizes in its appellate brief, the defendant does not challenge on appeal the court's determination that the cause of action on which the UK judgment is based is not repugnant to the public policy of this state. Accordingly, that issue is not before this court.[9]

On the basis of the foregoing, we conclude that the court properly denied the defendant's motion to open.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Ilya Yurov, Nikolay Fetisov, Nataliya Yurova, Irina Belyaeva, and Elena Pischulina also were named as defendants in this action, but they did not appear in the trial court and are not participating in this appeal. Accordingly, any reference herein to the defendant is to Sergey Belyaev only.

[2] "The defendant and certain of the other defendants named in this case were shareholders of the plaintiff and also owned the companies to which they made fraudulent loans or conducted fraudulent transactions. The UK court found those defendants liable for the financial ruin of the plaintiff." *National Bank Trust* v. *Yurov*, 210 Conn. App. 776, 778 n.2, 271 A.3d 171 (2022).

[3] "General Statutes § 50a-33 provides: 'Except as provided in section 50a-34, a foreign judgment meeting the requirements of section 50a-32 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit.'

"General Statutes § 52-605 (a) provides: 'A judgment creditor shall file, with a certified copy of a foreign judgment, in the court in which enforcement of such judgment is sought, a certification that the judgment was not obtained by default in appearance or by confession of judgment, that it is unsatisfied in whole or in part, the amount remaining unpaid and that the enforcement of such judgment has not been stayed and setting forth the name and last-known address of the judgment debtor.' " *National Bank Trust* v. *Yurov*, supra, 210 Conn. App. 778–79 n.3.

[4] Section 6 of the Executive Order provides in relevant part: "For the purposes of this order . . . (b) the term 'Government of the Russian Federation' means the Government of the Russian Federation, any political subdivision, agency, or instrumentality thereof, including the Central Bank of the Russian Federation, and any person owned, controlled, or directed by, or acting for or on behalf of, the Government of the Russian Federation." Executive Order No. 14,024, Blocking Property With Respect To Specified Harmful Foreign Activities of the Government of the Russian Federation, 86 Fed. Reg. 20,249, 20,251 (April 19, 2021). Section 8 provides in relevant part: "The Secretary of the Treasury, in consultation with the Secretary of State, is hereby authorized to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President . . . as may be necessary to carry out the purposes of this order. The Secretary of the Treasury may, consistent with applicable law, redelegate any of these functions within the Department of the Treasury. All departments and agencies of the United States shall take all appropriate measures within their authority to carry out the provisions of this order." Id., 20,252.

[5] The April 15, 2021 OFAC directive was amended twice; see 87 Fed. Reg. 32,303 (May 31, 2022); 88 Fed. Reg. 36,648 (June 5, 2023); both amendments made technical, nonsubstantive changes that are not relevant to this appeal. For purposes of clarity, we refer to the current revision of the OFAC directive.

Accordingly, the OFAC directive provides in relevant part: "Pursuant to sections 1 (a) (iv), 1 (d), and 8 of Executive Order 14,024, 'Blocking Property

With Respect To Specified Harmful Foreign Activities of the Government of the Russian Federation' . . . the Director of [OFAC] has determined, in consultation with the Department of State, that the [CBR and the two other entities] . . . are political subdivisions, agencies, or instrumentalities of the Government of the Russian Federation, and that the following activities by a United States person are prohibited, except to the extent provided by law, or unless licensed or otherwise authorized by [OFAC]:

"Any transaction involving the [CBR or the two other entities] . . . including any transfer of assets to such entities or any foreign exchange transaction for or on behalf of such entities.

"All other activities with entities determined to be subject to the prohibitions of this Directive, or involving their property or interests in property, are permitted, provided that such activities are not otherwise prohibited by law, the [Executive] Order, or any other sanctions program implemented by [OFAC].

"Except to the extent otherwise provided by law or unless licensed or otherwise authorized by [OFAC], the following are also prohibited: (1) any transaction that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the prohibitions of this Directive; and (2) any conspiracy formed to violate any of the prohibitions of this Directive. . . ." Publication of Directive 4 (as Amended) Under Executive Order 14,024 of April 15, 2021, 88 Fed. Reg. 36,648, 36,649 (June 5, 2023).

[6] The defendant also argued that, because the CBR is subject to the Executive Order and OFAC directive, and the CBR owns approximately 97 percent of the plaintiff, the plaintiff also is subject to the Executive Order and OFAC directive.

[7] Specifically, the defendant argues that the court incorrectly determined that the enforcement of the judgment will not be repugnant to the public policy of this state on the basis of what he claims are erroneous findings that (1) the plaintiff is not a sanctioned entity, (2) the sanctions on the CBR do not prohibit the plaintiff's collection activity, and (3) the funds collected by the plaintiff will not fund Russian aggression in Ukraine.

[8] The defendant argues that "[t]he new version of the [Uniform Foreign-Country Money Judgments Recognition] Act which has been adopted by a majority of states, including New York, Maine, and Rhode Island, makes clear that it applies to the judgment itself and not merely the cause of action. See Uniform Foreign-Country Money Judgments Recognition Act § 4, comment 8 (2005). While Connecticut has not yet modernized its version of the act, there is no reason to believe that the Connecticut legislature will not adopt the new act. Moreover, as a uniform act, its interpretations are meant to be uniform around the country. [General Statutes] §50a-38. Thus, the restrictive interpretation used by the Superior Court that the cause of action must be against the policy of the United States should not apply." Because the court was required to interpret and apply the version of the act adopted by our legislature, we decline to entertain the defendant's argument.

[9] Because we conclude that the court properly denied the defendant's second motion to open on the basis that the cause of action on which the UK judgment is based is not repugnant to the public policy of this state; see General Statutes § 50a-34 (b) (3); we need not address the defendant's remaining arguments that the court improperly determined that (1) the plaintiff is not a sanctioned entity, (2) the sanctions on the CBR do not prohibit the plaintiff's collection activity, and (3) the funds collected by the plaintiff will not support Russia's invasion of Ukraine, as those arguments attack the judgment itself.

_____